CHARLES CARREON (OSB: 93469)
Online Media Law, PLLC
423 Gateway Drive
Pacifica, California 94044
Tel: 650/735-5277

Attorney for Plaintiff American Buddha

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| AMERICAN BUDDHA, an Oregon Nonprofit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY OF ASHLAND AND THE WASHINGTON POST COMPANY,<br><br>Defendants. | Case No.: 1:06-cv-3054<br><br>PLAINTIFF'S CONCISE STATEMENT OF MATERIAL DISPUTED FACTS |

1. The City of Ashland ("the City") is a municipal subdivision of the State of Oregon.

2. The City has operated its Internet service under the name of Ashland Fiber Net since the summer of 1999. (Exhibit 1.)

3. Joe Franell is the Information Technology Director for the City of Ashland, and it is his duty to "direct the operations" of AFN. (Joe Franell Depo., 5:23-6:1.)

4. AFN is " a 100 percent municipally owned" system that has as its goal "to provide advanced telecommunications services to the citizens of Ashland," including "high speed Internet services, television or other video services," all of which the City concedes "involve speech." (J. Franell Depo., 25:19 – 26:2.)

5. AFN's Internet service permits users to host websites through a modem that has a unique "MAC address" that serves as an "on-off switch" for Internet speech. (Exhibit 2, Transcript of Joe Franell Depo., 26:16 – 27:21.)

6. Since 2005, plaintiff has used an AFN MAC address to operate a network of approximately forty websites hosted on an Internet "server" computer, plus various email accounts and online business software applications ("Plaintiff's Network"). (Charles Carreon Dec. ¶ 4.)

7. The largest website on Plaintiff's Network is the American Buddha Online Library ("ABOL"), hosted at www.american-buddha.com, a membership website with a member list of approximately fifty-thousand and growing. ABOL provides access to a library of literary and artistic works exclusively to members to warrant, prior to gaining admission, that they will use all of the media materials found therein "for private study, scholarship or research." (Charles Carreon Dec. ¶¶ 5-6.)

8. ABOL also features including satirical political photo-collages. (Charles Carreon Dec. ¶ 7.)

9. ABOL has implemented security measures to keep all of its digital content behind the "ABOL Signup Page." (Charles Carreon Dec. ¶ 8.)

10. Plaintiff's Network also hosts the web-version of a Southern Oregon political magazine, The Ashland Free Press, at www.ashlandfreepress.com. (Charles Carreon Dec. ¶ 9.)

11. The Ashland Free Press has covered various financial and employment problems that have dogged AFN over the last several years. The Ashland Free Press reported critically on the process whereby AFN chose to employ Joe Franell as AFN head, notwithstanding the City's employment of his brother Mike Franell as the City Attorney. (Charles Carreon Dec. ¶ 10.)

12. Plaintiff's Network is managed by Pine Creek Hosting, LLC ("PCH"). After the August 2nd shutoff, Plaintiff's Network registered PCH as its agent for receipt of notices of Infringement under the DMCA ("Plaintiff's Designated Agent"). When PCH receives a DMCA notice, rather than simply turning off Plaintiff's

Network, it will remove only the particular webpages designated by the complainant, thus utilizing the "least intrusive means" of providing the regulation of free speech necessary to protect the interests of copyright holders. (Carreon Dec. ¶ 12.)

13. AFN would only turn off a modem hosting websites if: (1) it had been used to launch "viruses, spams, network attacks," or (2) there was "a verified allegation of copyright infringement." (Exhibit 2, Transcript of Joe Franell Depo., 29:5 – 30:1)

14. "A determination by AFN that some content were pornographic, or obscene or doctored … would not lead to a shutdown." (Exhibit 2, Transcript of Joe Franell Depo., 33:21 – 34:1.)

15. On August 2, 2006, Holbo turned off Plaintiff's Network without any prior notice to plaintiff because of a brouhaha that had blown up over complaints by a newspaper columnist named Kathleen Parker ("Parker"), who had called and emailed Holbo the day before, complaining that her children had "Googled her" and seen a "doctored mugshot," which she asserted was "both obscene and a copyright infringement." (Exhibit 8; Holbo Depo., 4:18-5:5; 11:9-13:10; 17:1-22.)

16. Parker's email contained a forward from someone who had instructed Parker to "have them shut down this IP address: \*\*.\*\*\*.\*\*.\*\*.  This IP number is owned by an entity in Ashland, Oregon -- http://www.ashlandfiber.net." (Exhibit 8.)

17. Notwithstanding having foreknowledge that "one modem may service a large number of websites," no one employed by the City determined how much "collateral damage" would occur to other websites besides www.american-buddha.com when AFN/Holbo turned off Plaintiff's Network. (Joe Franell Depo., 34:2-18.)

18. When AFN/Holbo turned off Plaintiff's Network, approximately forty websites were silenced, and all email accounts on Plaintiff's Network became unusable, and the Internet connections for plaintiff and plaintiff's counsel were shut down. (Charles Carreon Dec. ¶ 13.)

19. City Attorney Mike Franell, made aware of Holbo's decision to turn off Plaintiff's Network, made no objection to the plan and allowed it to proceed. (Joe Franell Depo., 13:5-14:8; Mike Franell Depo., 5:7-23.)

20. Holbo knows both more, and less, about copyright law, than he willingly discloses. (Holbo Depo., 18:12-19.)

21. Holbo claimed it was "not my job to determine whether something is copyright infringement or not," but then admitted that actually, it was. (Holbo Depo., 20:1-20.)

22. Holbo knew that Parker's Exhibit 8 email was not DMCA-compliant, because it wasn't signed under penalty of perjury, wasn't sent under the authority of a copyright-holder, and didn't identify the allegedly infringing material. (Holbo Depo., 31:3-32:4.)

23. Holbo crafted a pseudo-DMCA notice for Parker's benefit, "cutting and pasting" copyright notice language from the Washington Post website so as to assert that The Washington Post Company was complaining of an infringement to *its* copyrights, sent it to Mike Franell for approval, and after receiving that approval, sent it on to InfoStructure. (Holbo Depo., 37:20-40:21; Mike Franell Depo., 5:7-23.)

24. Holbo telephoned John Dowd ("Dowd") at InfoStructure and, misrepresenting a giant newspaper company as the source of the complaint, attempted to pressure Dowd into turning off Plaintiff's Network, a technical feat that Dowd/InfoStructure could have accomplished without Holbo's assistance. (Holbo Depo., 58:3-15.)

25. Dowd would not turn off Plaintiff's Network, so Holbo turned off Plaintiff's Network himself. (Holbo Depo., 58:3-15.)

26. Holbo was not "on a lark and a frolic." (Mike Franell Depo., 5:7-23.)

27. City Attorney Mike Franell ratified Holbo's conduct three months later at his deposition, confirming that "he did what he was supposed to do." (Mike Franell Depo., 5:7-23.)

28. Section 17 USC § 512 was enacted by Congress as the Online Copyright Infringement Liability Limitations Act. Section 512 provides a safe harbor from liability for copyright infringement claims arising out of websites hosted by an Online Service Provider ("OSP") that complies with three requirements of law:

    (1)    Designates an Agent to Receive Notification of Claims of Infringement at the US Copyright Office website;

    (2)    Reviews notifications of copyright infringement to determine whether they meet the standards set forth in § 512(c)(3)(A), and thus constitute a valid "DMCA notice;" and,

    (3)    Adheres to the "notice and takedown procedure" set forth in § 512(g)(2)-(3) when it is presented with a valid DMCA notice. (17 USC § 512.)

29. The DMCA has been in effect since January 27, 1999.[1]

30. Joe Franell acknowledged that "a DMCA policy … is a great help in running an Internet service provider like Ashland Fiber Net," and that "determining the bona fide nature of any individual allegations of copyright infringement" is a "crucial activity for AFN." When he was deposed in November, Joe Franell still didn't know how to determine whether a complaint of copyright infringement was a valid DMCA notice, or whether to be valid, a DMCA notice was supposed to be sworn under penalty of perjury. (Joe Franell Depo., 10:6-14.)

---

[1] Note to 17 USC § 101 regarding *Effective Date of 1998 Amendments*.

- 5 –
PLAINTIFF'S CONCISE STATEMENT OF MATERIAL DISPUTED FACTS

31. After seven years operating as an OSP subject to the provisions of the DMCA, on August 2, 2006, the City still had no written DMCA policy.  (Joe Franell Depo., 5:19-22.)

32. The only copyright-related policy the City had adopted as of the date of Joe Franell's deposition last November was one Holbo wrote, dated August 11, 2006, entitled "AFN Copyright Infringement Process," attached as Exhibit 4, and referred to herein as "the August 11, 2006 Policy."  (Joe Franell Depo., 6:14-21; 7:8-23; and Exhibit 4.)

33. According to Holbo, the August 11, 2006 policy was recorded in his memory until that date, although it had been in use by AFN for years.  (Holbo Depo., 21:1-20, referring to the August 11, 2006 policy as "Exhibit 1".)

34. The August 11, 2006 Policy does not adhere to the DMCA safe harbor in any of its particulars; rather it maximizes Holbo's discretion and maintains AFN's completely arbitrary posture toward the First Amendment rights of its Internet users.  Holbo told Joe Franell that he followed this after-adopted policy when he shutoff of Plaintiff's Network.  (Joe Franell Depo., 7:24-8:16.)

35. In November 2006, the City was still following the August 11, 2006 Policy with respect to copyright infringement claims received by AFN.  (Joe Franell Depo., 21:18-2:6; Exhibit 4.)

36. In November 2006, Joe Franell didn't know whether the August 11, 2006 Policy complied with the DMCA, and said that because "my relationship is as a wholesaler to ISPs, I don't know it that is a requirement or not of the DMCA." (Joe Franell Depo., 22:18-25.)

37. In November 2006, Joe Franell expressed the intention to "inquire into DMCA compliance with counsel for the City of Ashland … to determine whether perhaps some amendment" to the August 11, 2006 Policy "would bring it into compliance

with the DMCA," and conceded that "in a sense, this case is highlighting a legal concern" on which he intended to follow up.  (Joe Franell Depo., 23:1-20.)


Dated:  January 28, 2007           /s/Charles Carreon/s/
                                   CHARLES CARREON (OSB #93469)
                                   Attorney for Plaintiff American Buddha
                                   Online Media Law, PLLC
                                   423 Gateway Drive, #64
                                   Pacifica, California 94044
                                   Tel: 541-735-5277