FILED'07 JUL 19 11:20USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| AMERICAN BUDDHA, | ) | Civil No. 06-3054-PA |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER GRANTING** |
| | ) | **DEFENDANT'S MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| CITY OF ASHLAND, | ) | |
| | ) | |
| Defendant. | ) | |

**PANNER, Judge.**

Plaintiff American Buddha brings this 42 U.S.C. § 1983 action against the City of Ashland (the City) claiming that the City violated plaintiff's constitutional and statutory rights when the City disconnected a modem hosting plaintiff's website. The City moves for summary judgment. I grant the motion.

**LEGAL STANDARD**

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56

1- OPINION AND ORDER

mandates that summary judgment be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's claim. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## BACKGROUND

The City owns and operates a fiber-optic network called Ashland Fiber Network (AFN). AFN contracts with internet service providers (ISPs), who then contract with the individual end-users. AFN provides connection to the internet. AFN does not dictate how those connections are used by the end-user.

Richard Holbo (Holbo) is the telecommunications engineer for AFN. On August 1, 2006, Holbo received an email from Kathleen Parker (Parker), a columnist with the Washington Post. Parker stated that Tara Carreon, an artist for American Buddha, had doctored a photograph of Parker to create a pornographic image appearing on American Buddha's website. Parker asked Holbo to disconnect the modem servicing American Buddha's internet protocol address, claiming that the image was both obscene and a copyright infringement.[1] Holbo forwarded Parker's email to Mike Franell, the city attorney, and discussed the issue with him.

On August 2, 2006, Holbo contacted Infrostructure, American Buddha's ISP, asking them how he should proceed. Infrostructure

---

[1] It was determined later that the image did not constitute a copyright violation. Defendant Washington Post has been dismissed by stipulation.

2- OPINION AND ORDER

instructed Holbo to turn off the modem servicing the American Buddha website because of the copyright violation complaint. On August 2nd, around 4:15 p.m., Holbo disconnected the modem providing internet service to the American Buddha website. Some forty websites on plaintiff's network were also shut down as a result of Holbo's disconnecting the modem. For reasons unclear by the record, about an hour later Holbo reconnected the modem.

Joe Franell, the director of AFN, denies he made the decision to disconnect the modem. According to the record, Infrostructure was the primary decider with respect to disconnecting the modem.

On August 11, 2006, Holbo wrote down from his memory the policy he had been using to deal with alleged copyright infringement complaints. The process, as recorded by Holbo, is as follows:

> **AFN Copyright Infringement process.**
>
> 1.  Receive notice of copyright infringement.
> 2.  Attempt to contact downstream customer. (phone with follow-up email)
> 3.  If infringing material is still available after 8 hours, attempt to notify customer(phone if possible follow-up with email).
> 4.  Place Modem in local.modems file on DHCP servers with a disable.modem config file with notations as to who/what why then reset the modem.
> 5.  When downstream customer calls back and assures us that material is not longer available, comment out of local.modems file and reset modem.

Carreon Aff. Exhibit 4 (Exhibit 4). It is not clear from the record exactly who, besides Holbo, had been using this previously

3- OPINION AND ORDER

unwritten policy, or where it originated. Joe Franell stated at deposition that he did not know when the policy was adopted.

## DISCUSSION

To bring a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must demonstrate that the execution of a government's official policy or custom deprived plaintiff of rights, privileges, or immunities secured by the Constitution. Monell v. City of New York, 436 U.S. 658, 694 (1978). A municipality may not be held liable under § 1983 solely because it employs a tortfeasor. Id. at 692. The courts have consistently refused to hold a municipality liable under a theory of *respondeat superior*. See id.; Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1986); Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988); City of Canton v. Harris, 489 U.S. 378, 392 (1989). Instead, a plaintiff seeking to impose liability on a municipality under § 1983 needs to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997). Further, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must

4- OPINION AND ORDER

demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404.

In this instant case, American Buddha has two possible avenues it may use to establish a § 1983 claim against the City. First, plaintiff may show that Exhibit 4 represents the City's "official policy" and that the execution of that policy caused a deprivation of plaintiff's rights. Alternatively, plaintiff may show that the City caused a deprivation of plaintiff's rights by failing to train its employees or to establish an appropriate policy, and that this failure amounted to "deliberate indifference." Pembaur, 475 U.S. at 481.

## I. Official Policy

Plaintiff has not shown that the injuries were a result of Holbo following an official city policy. In fact, plaintiff even suggests that the injury was cause by Holbo *not* following the policy. Moreover, plaintiff has not shown who was responsible for making official policy for the City regarding alleged copyright violations. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. Only if a particular course of action is properly made by the municipality's authorized decisionmakers, or by those whose edicts or acts may fairly be said to represent official policy, may that action be considered official policy. Id. at 480; Monell, 436 U.S. at 694. The official policy requirement is

5- OPINION AND ORDER

intended to distinguish acts of the municipality from acts by one of the municipality's employees. Pembaur, 475 U.S. at 479.

Plaintiff identifies a "policy," Exhibit 4, but shows no facts demonstrating that the criteria outlined in Exhibit 4 represent the City's *official* policy, or that the policy originated from the City's *authorized* decisionmakers. In addition, Holbo apparently disconnected the modem upon instruction from Infrastructure, an entity independent from the City, thus further isolating the City from any liability.

## II.  Failure to Train or Establish Policy

The alternative argument is that the City failed to train Holbo in appropriate procedures necessary to handle copyright infringement complaints or to establish a policy for copyright infringement complaints. Only when a municipality's failure to train its employees or to establish a policy demonstrates a deliberate indifference to the rights of its inhabitants can such a failure be properly considered a policy or custom of the municipality. City of Canton, 489 U.S. at 389. Municipal liability attaches only where there is a deliberate choice to follow a course of action, selected from among various alternatives by city policymakers. Id. The issue is not whether the training is adequate, but whether the inadequate training amounted to deliberate indifference, and thus can justifiably be considered city policy or custom. Id. at 390. Generally, the

6- OPINION AND ORDER

need for more or different training must be so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent. Id. Plaintiff has not shown that its federal rights were violated by the City's failure to train or establish a policy.

## CONCLUSION

Defendant's motion (#11) for summary judgment is granted. Defendant's motion (#26) to strike is denied as moot.

IT IS SO ORDERED.

DATED this __19__ day of July, 2007.

_____
OWEN M. PANNER
U.S. District Judge

7- OPINION AND ORDER